## LEVER BROS. CO. v. JAY'S CHEMICAL CORPORATION.

### No. 7224.

District Court, E. D. New York.

May 15, 1934.

De Forest, Cullom & Elder, of New York City (Neil P. Cullom, Harry D. Nims, and Henry W. Steingarten, all of New York City, of counsel), for complainant.

Herbert Tenzer, of New York City (N. R. Kaplan and M. P. Kletzky, both of New York City, of counsel), for defendant.

BYERS, District Judge.

Motion by plaintiff, in equity, for a temporary injunction in an unfair competition case.

Jurisdictional facts are alleged in the bill and are not denied in the defendant's opposing papers. The affidavits filed by both sides are voluminous, and consideration thereof, for present purposes, yields the following:

Upwards of thirty years ago, the plaintiff began to manufacture and sell in the United States "Lifebuoy" soap, light red in color and having a carbolic or cresylic odor; the business so established has consistently grown and increased through the years, in part as the result of intensive advertising of all kinds. The plaintiff's business today is of very substantial proportions.

The trade-mark "Lifebuoy" was registered in the United States Patent Office by the plaintiff over forty years ago, and has been renewed, and the trade-mark has been continuously used by the plaintiff to identify the product above described. In 1901 or thereabouts, the cakes of soap in convenient size for personal use were marketed in their present octagonal form, and that practice has continued during the intervening years.

This "Lifebuoy" soap has come to be widely identified by the consuming public and by distributors as the product of the plaintiff; that is to say, the name, color, odor and shape of the soap, in the combination developed by the plaintiff (including the use of the term "health soap") constitute a commercial property which is distinctive and which is associated with the plaintiff in the public mind.

The defendant company has been in existence for about two years, and in 1933 started the manufacture and sale of a competing article, for which it adopted the designation "Life-Guard Health Soap." The defendant's purpose in so doing was to devise a product substantially like that of the plaintiff's in color, odor, shape and general appearance, and to market it under a name which would be so like that adopted and used by the plaintiff that it can be fairly termed an imitation.

While this purpose is disclaimed in the defendant's affidavits, the stenographic record of a portion of an interview between an agent of the plaintiff and an officer of the defendant corporation discloses such a purpose.

By way of accomplishment, the defendant has made and sold a toilet soap in cakes of the same shape and substantially the same size and of substantially the same characteristic odor and color as the plaintiff's "Lifebuoy" soap, using the name "Life-Guard."

Before adopting a formula for the manufacture of this soap, the defendant caused the plaintiff's product to be analyzed in order to determine the nature and quantity of the chemical employed by the plaintiff to im-

part the characteristic odor above referred to, and then adopted the same constituent in its own product, sufficiently to accomplish its said purpose. The color of defendant's soap, while of a slightly different shade from that of "Lifebuoy," is sufficiently close to it to cause confusion between the two articles, in the absence of opportunity to compare them in a natural light; that is to say, under conditions that do not exist in the ordinary retail store.

Had the defendant masked its purpose by adopting only one of the characteristic properties of the plaintiff's product—if, for instance, it had adopted a blue color or green instead of the red; or if it had adopted the same color and a different odor, and had not employed the word "Life-Guard" in obvious simulation of the plaintiff's trade-mark—the mere use of the octagonal shape cake or the term "Health Soap" could not well be the subject of complaint; but the aggregation by the defendant of all of the characteristics of the plaintiff's product, as described, makes it abundantly clear that the defendant intended to imitate the plaintiff's product and to enter into unfair competition with it, and there are no allegations of fact contained in the defendant's affidavits which point to a different conclusion.

The defendant relies on the alleged fact that toilet soaps of a reddish color and having a carbolic odor have been manufactured and sold in the past. This is not susceptible to present determination, but the only instance which the defendant's papers disclose of the manufacture and sale of a carbolic acid soap artificially colored red, which was on the market when the defendant company was organized, is that of J. Eavenson & Sons, Inc., whose "Jesco" oval cake may be thought to have been shown in then current sale in the Philadelphia market; but that fact does not prove that the defendant had the right to imitate plaintiff's product. The defendant is not making something which simulates the Eavenson product, while such is the compliment that it is paying to the plaintiff.

Much is said in the defendant's papers about monopoly and other things which have no bearing on this controversy. The disposition of this motion is not to be taken to indicate that the plaintiff is thought to be entitled to monopolize the manufacture and sale of red carbolic toilet soap. It is to be taken to indicate that the plaintiff has shown sufficiently for the purposes of a temporary injunction, that the defendant has almost completely copied the plaintiff's product in an effort to gain an advantage from the good will of the plaintiff's business. In other words, it is thought that the plaintiff has brought itself clearly within the language of the opinion in the case of Harvey Hubbell, Inc., v. General Electric Co. (D. C.) 262 F. 155, 160, in which it is said:

"Nor is this in conflict with the now well-established rule that, if an article has a leading and striking characteristic, which characteristic is designedly given by its maker, and advertised and exploited, and afterward recognized, particularly by purchasers, because of such characteristic, the right to make and use the characteristic can be protected by an action, if an imitation is perpetrated. This rule finds its support in what is referred to in the cases as nonfunctional unfair competition. It presupposes that the appearance of the article, like its descriptive title, has a secondary meaning, and has been associated in the public mind with the first comer as a manufacturer or source, and if a second comer imitates the article exactly, so that the public will believe his goods have come from the first and will buy, in part at least, because of that deception, the court will enjoin the second comer."

To apply the foregoing to this case, it may be observed that the plaintiff was the first comer as the manufacturer of "Lifebuoy" soap, which possesses easily recognizable nonfunctional characteristics of color, odor, and form, which the public has come to regard as desirable, since the business has developed into a substantial enterprise.

It does not change that fact, nor lessen its legal implications, to assume without deciding, that there may have been at odd times and in sundry places, here and there, red colored, so-called carbolic soaps, which may have enjoyed a brief popularity. The defendant has not undertaken to capitalize the advertising efforts of defunct or obscure enterprise, nor to imitate products other than that of the plaintiff.

It follows that the plaintiff is entitled to a preliminary injunction against the defendant, enjoining the latter pendente lite from:

(1) Making or selling or offering for sale or otherwise disposing of any soap, not made by or for the plaintiff, which is of a light red or coral color and possesses a carbolic or cresylic odor;

(2) Using the name "Life-Guard" or any other imitation or simulation of the word "Lifebuoy."

The amount of security to be given by the plaintiff may be agreed upon by the parties and, if this is not possible, the court will fix it on the settlement of the order to be entered hereon.

Settle order on three days' notice.